UNITED STATES of America,
Plaintiff-Appellee,

v.

Larry Joseph BROWN, Defendant-Appellant.

No. 72–3164
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Feb. 14, 1973.

Debra A. Millenson, New Orleans, La. (Court appointed), for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Mary Williams Cazalas, Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and DYER and SIMPSON, Circuit Judges.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New

York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

SIMPSON, Circuit Judge:

The defendant-appellant, Larry Joseph Brown, was arrested November 15, 1971 and charged with the armed robbery of the Harding-Plank Branch of the Louisiana National Bank, Baton Rouge, Louisiana, on November 12, 1971, in violation of Title 18, U.S.C., Section 2113(a), (d). Following indictment for those offenses on December 9, 1971, by a Grand Jury of the then Baton Rouge Division of the Eastern District of Louisiana[1] he was tried before a jury in the New Orleans Division of the Eastern District and was adjudged guilty September 2, 1972. The trial judge imposed a 20 year confinement sentence on September 6, 1972, and this appeal followed.

The sole issue raised on appeal is whether or not the search and seizure conducted by special agents of the Federal Bureau of Investigation was constitutional, and whether "bait" money from the bank and a notebook containing fingerprints of Brown were properly introduced into evidence. The question was preserved for appellate review by a pretrial motion to suppress the evidence which was denied. We affirm the judgment below.

Based on information furnished by an attorney to a state official and passed on by him to the FBI and the U.S. Attorney's Office, a warrantless search was conducted on an abandoned farm located northwest of Winnfield, Louisiana, about 150 miles from Baton Rouge. The farm included an abandoned house which was reached by leaving a gravel road and driving about a quarter of a mile through an open field. It was located amid trees in the center of the field and next to it was a broken down wire fence made of chicken wire and a chicken coop approximately eight feet by eight feet and about four to five feet high. Although not falling down the house was not in good repair. It contained no furniture and some of the windows were broken. The premises were abandoned and it did not appear that chickens had been in the chicken coop for a considerable time. Acting upon the information furnished, the officers dug at a point adjacent to the chicken coop which was covered with a sheet of wallboard apparently placed there to protect the area. The officers could not determine whether the ground had been freshly dug because it was raining. Two or three inches below the ground surface the officers found a suitcase wrapped in plastic garbage bags with a piece of beaver board placed over it. The suitcase bore no name or other identification to show its ownership. The suitcase was taken to the front porch of the abandoned residence and opened. The money, identified as "bait" money from the bank robbery, was observed in the suitcase, as well as a notebook which bore the defendant-appellant Brown's fingerprints. Brown did not assert any ownership in the farm location but contended that he had an interest in the suitcase and had standing to move to suppress the search and its fruits under United States v. Jones, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697.[2] The trial judge overruled and denied the motion to suppress and allowed the introduction of the suitcase and its contents into evidence at the trial.

Brown relies on the holding of *Jones* that while the right to freedom from unreasonable search and seizure guaranteed by the Fourth Amendment was a personal right, it may be asserted that he has a proprietary interest in either

---

1. The Middle District of Louisiana was created by Public Law 92–208; 85 Stat. 741, on December 18, 1971 and came into being under the terms of the statute 120 days thereafter, or approximately April 18, 1972.

2. It should also be noted that the search was conducted three days after Brown's arrest in Baton Rouge and that no claim that the search was incident to that arrest or that Brown consented to the search was advanced by the government. The appellant also points out that since Brown was being held in default of a bail bond of $50,000, there was no real threat that he would have been able to reach and destroy the evidence before a search warrant could have been obtained.

the property searched or the article seized.[3] While disclaiming any interest in the Winnfield farm where the suitcase was found, Brown does assert that it was his proprietary interest in the suitcase which prompted the search, that he was the person against whom the search was directed and that the government may not be permitted to impute such ownership of the suitcase as it sees fit, while denying him the right to contest its seizure. As the sole person aggrieved by the search he contends that he should be permitted to assert the rights conferred by Rule 41, F.R.Crim.P. and the Fourth Amendment. He contends that the search would only have been justified if conducted under the authority of a search warrant.

The appellee counters that whether or not Brown had standing as he claims is immaterial since the search was valid and no warrant was required, citing the holding of Hester v. United States, 1924, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898,

that the special protection accorded to the people in their persons, houses, papers, and effects by the Fourth Amendment does not extend to open fields, and that the distinction between open fields and houses is as old as the common law.

■ We think that this position is correct and that the "Open Fields Doctrine" still prevails. Search of open fields without a search warrant is not unreasonable and is not constitutionally impermissible [4].

■ We construe the leaving of the suitcase buried in the chicken coop in an open field as an abandonment of it by Brown, and hold that the officers were justified in opening it without first obtaining a warrant.[5]

The district court ruled correctly when it denied the motion to suppress the search and overruled the objection to the fruits of it being received in evidence. The judgment appealed from is

Affirmed.

3. Appellant also cites the following cases: Garza-Fuentes v. United States, 5 Cir. 1968, 400 F.2d 219; Hensel v. United States, 5 Cir. 1961, 296 F.2d 650; and Hair v. United States, 1961, 110 U.S. App.D.C. 153, 289 F.2d 894.

4. See among other cases the following: United States v. Cain, 7 Cir. 1972, 454 F.2d 1285, 1286; McDowell v. United States, 8 Cir. 1967, 383 F.2d 599; United States v. Sorce, 7 Cir. 1963, 325 F.2d 84; Monnette v. United States, 5 Cir. 1962, 299 F.2d 847; Giacona v. United States, 5 Cir. 1958, 257 F.2d 450, cert. denied 1958, 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed. 2d 104; Morton v. United States, 5 Cir. 1956, 155 F.2d 503. In Sorce the Seventh Circuit held that where the search did not extend to the inside of a store building but was confined to the top of a foundation block a foot or two removed from the open fields, it was not within the protec-

tion of the Fourth Amendment, citing Hester v. United States, supra.

5. See United States v. Spaulding, 5 Cir. 1972, 462 F.2d 1346, cert. denied 1972, 409 U.S. 884, 93 S.Ct. 173, 34 L.Ed.2d 139; Hester v. United States, supra; Abel v. United States, 1960, 362 U.S. 217, 240–241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668, 687. See also United States of America v. Colbert and Reese, 5 Cir. en banc 1973, 474 F.2d 174, and the cases there cited. As pointed out in Colbert and Reese, 474 F.2d 176, "The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, *left behind*, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. [Citations omitted]". (Emphasis supplied).